246 A.2d 817.

Fred Podren *vs.* Albert C. Johnson *et al.*
Albert C. Johnson *et al. vs.* Peter J. Coelho *et al.*

OCTOBER 14, 1968.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

Powers, J.  These are three appeals from identical judgments entered in two separate civil actions which were consolidated for trial to a superior court justice sitting without a jury.  The circumstances out of which the litigation arose

lend substance to the common belief that there are instances where fact is barely, if at all, more credible than fiction.

Some time in January 1963, Peter J. Coelho, a part-time real estate broker, purchased a dwelling house from the state of Rhode Island. Pursuant to that sale, Coelho was required to remove the house from the lot on which it was located; said lot having been condemned by the state for highway purposes. Searching for a suitable lot on which the house could be relocated, Coelho observed an unimproved tract of land on the easterly side of Goldsmith Avenue in East Providence. Inspection of the East Providence land records disclosed that included in said unimproved tract was a lot owned by Antonio Gomes and wife. It was designated in said records as lot 86 on assessor's plat 20, fronting 50 feet on Goldsmith Avenue and containing 5,333 square feet. Coelho and his wife, hereinafter called "Coelhos," purchased said lot 86 from the Gomes and engaged the Waterman Engineering Company to survey it, having only a general idea as to the lot's precise location. Waterman's representative, however, intending to lay out lot 86, erroneously surveyed and staked out lot 87 on assessor's plat 20. He walked Coelho from stake to stake and the latter, understandably, assumed that it was lot 86 which was being pointed out. Indeed, the surveyor placed two stakes on the lot to indicate generally where the house should be located. The surveyed lot 87 abutted lot 86 to the north and was the property of one Fred Podren, a Massachusetts resident.

Parenthetically, it should be noted that each lot has a frontage of 50 feet on Goldsmith Avenue; that lot 86 is slightly larger, but contains less than 100 additional square feet; that lot 86 which the Coelhos purchased from Gomes was zoned residential; whereas Podren's lot 87 was zoned commercial and was one of five lots so zoned, owned by Podren.

Relying on the location of lot 86, as pointed out by Waterman, the Coelhos applied to the East Providence building inspector and department of public works for permission to excavate a foundation and to move the house purchased from the state. Approval was given and the department of public works assigned street number 47 Goldsmith Avenue, noting in its records that this street number designation corresponded to lot 86 on assessor's plat 20. A foundation was then dug on lot 87 which was pointed out to the construction company as being Coelho's lot 86 and the house was duly placed thereon. The foundation and the house relocated thereon were in fact on lot 87 of said plat. On this state of the city's records, the tax assessor continued to tax lot 87 to Podren as unimproved property, while the Coelhos were assessed for an improved lot 86.

Later, in the summer of 1963, Mr. Coelho made it known to friends that the property designated as 47 Goldsmith Avenue was available for sale. He showed the property to Mr. and Mrs. Albert C. Johnson who, on September 9, 1963, signed an agreement to purchase the property for $12,800. Simultaneous with the signing of this agreement, the Johnsons made a binder payment of $500. They then applied to the Peoples Savings bank for a mortgage in the amount of $11,300, which mortgage was approved by the bank and insured by the Veterans' Administration. A title examination, required by the bank and paid for by the Johnsons, was made by the Title Guarantee Company of Rhode Island. It established the validity of Coelhos' title to lot 86, but the fact that the house had been placed on lot 87 did not come to light.

On November 22, 1963, a closing was held by the title company. The Coelhos conveyed lot 86 to the Johnsons who paid them an additional $1,000, executed a mortgage to the bank as security for an $11,300 note and paid other incidental expenses. The following month, December 1963,

the Johnsons took possession of the house at 47 Goldsmith Avenue, where they lived without recorded misgivings until some time in April 1965. Then, however, they, the bank and the Coelhos learned that the house was located on the wrong lot. Their source of information was the East Providence Sewer department, which was engaged in work on Goldsmith Avenue. Upon investigation, the Coelhos learned that Waterman Engineering had been aware of the error for at least a year and had advised its insurance company at the time the mistake was discovered.

Meanwhile, the Johnsons engaged counsel who, by letter dated May 14, 1965, demanded rescission by the Coelhos, as well as damages for monies expended in connection with the purchase. Thereupon, Mr. Coelho telephoned a representative of Waterman Engineering Company and was advised that the matter was under investigation.

On July 29, 1965, the Johnsons filed a bill in equity naming the Coelhos, the Peoples Savings bank and the Title Guarantee Company of Rhode Island as respondents. It prayed for rescission of the sale, cancellation of the agreement and an accounting by all respondents, to the end that complainants be made whole. The bill further prayed for injunctive relief against the bank, seeking to restrain it from enforcing the terms of the note, as well as from foreclosing the mortgage.

Notwithstanding the commencement of suit, the Johnsons continued to occupy the house at 47 Goldsmith Avenue until December 29, 1965, on which day they quit the premises. The same day their counsel sent written notices to the bank, the title company and to the Coelhos that the Johnsons had moved out and would make the keys available to whichever interested party intended to protect the property. Within a day or two of the Johnsons' departure, the house sustained substantial damage from fire, the cause of which does not appear. The house, together with house-

hold furnishings had been insured by the Johnsons who, through counsel, filed a claim in excess of $2,000, with the very insurer who, by a remarkable coincidence, also insured Waterman Engineering. Fire damage to the house was claimed to be something in excess of $1,800, but whatever it was, the claim has not been settled.

In connection with the travel of the litigation, it should be noted that the Johnsons commenced their equity suit prior to January 10, 1966, the date on which the current superior court rules of civil procedure became effective. Prior to that date, specifically August 25, 1965, the bank filed its answer admitting execution by the Johnsons of the mortgage and note, and of having advised the Johnsons in April of that year that the house had been placed on the wrong lot; disclaiming any knowledge of how that error occurred; and averring, filed its answer that the mortgage was insured by the Veterans' Administration, by the terms of which insurance the bank's rights would be jeopardized if collections on the mortgage note were restrained for more than 90 days. The answer concluded with a prayer for appropriate relief in light of the Veterans' Administration's insurance conditions.

On September 9, 1965, a hearing was held in connection with the Johnsons' prayer for injunctive relief, after which a superior court justice, by decree entered September 24, 1965, enjoined the bank from asserting any claim against the Johnsons pending final determination on the merits of the bill.

The Title Guarantee Company answering, averred in substance that it was under no obligation to the Johnsons; that its policy ran to Peoples Savings Bank and, that in any event it had not been engaged to verify the "location" of a house on lot 86; a defense clearly established by the terms of its policy of insurance.

The Coelhos filed an answer on November 12, 1965, in

which they neither admitted nor denied the allegations of the Johnsons' bill, leaving them to their proof. However, they did aver reliance on Waterman Engineering, relating the circumstances heretofore described. They prayed for time in which to acquire lot 87 from Podren; that the court decree reformation rather than rescission, and further that Waterman Engineering be made a third party defendant and held responsible for all resulting damages.

Replying thereto, Waterman Engineering, on December 23, 1965, filed a demurrer to that part of Coelhos' answer seeking to join Waterman as a party. On January 10, 1966, the new superior court rules of civil procedure having become effective, the superior court justice construed Waterman's demurrer as a motion to be added as a third party-defendant and so construed, the motion was granted.

Meanwhile, specifically June 29, 1966, Fred Podren, a Massachusetts resident and record owner of lot 87, commenced a civil action against the Coelhos, Johnsons and Waterman Engineering. Averring injury to and loss of use of his property for more than two years, together with money damages, Podren sought to recover $5,000 in damages from each defendant or, in the alternative, offered to convey lot 87 for the sum of $10,000, to whichever party the superior court determined to be owner of the house.

Waterman Engineering answering, denied any breach of duty owed to Podren either in contract or tort, and for other defenses pleaded laches and estoppel. The Johnsons admitted all averments of which they had actual knowledge, but denied that any damages sustained by Podren were attributable to them. The Coelhos answering, denied each and every allegation of plaintiff while alleging that the complaint failed to state a cause of action on which relief could be granted.

On July 15, 1966, Waterman Engineering moved to consolidate both cases for trial, which motion was duly grant-

ed, October 24, 1966, by a superior court justice who thereupon proceeded to hear the cases without the intervention of a jury.

When all parties to both actions had rested, the trial justice announced, in substance, that his findings, rulings and resulting orders would be represented by a single judgment, entered in each case, which judgment was designed to do equity between all parties. As an adjunct to this procedure, he appointed a commissioner to whom all assessed damages would be paid and in turn paid by said commissioner to those parties for the benefit of whom damages were assessed. Likewise, all conveyances, transfers, assignments and releases to be made by the parties ordered to make them were to be made through the commissioner to the party for whose benefit they were ordered.

While holding that Waterman Engineering was not liable to Podren, either in contract or tort, he assessed all damages against Waterman Engineering in the total sum of $17,500, payable to the commissioner as aforesaid and distributable by him as follows.

Podren was awarded $3,500, conditioned however on Podren and his wife, of whose existence there is no evidence, conveying lot 87 either to the commissioner who would convey it to Waterman or directly to Waterman as the commissioner's nominee. After judgment had been entered, the Peoples Savings bank called the trial justice's attention to the fact that the supposed Mrs. Podren had not been a party to the litigation and moved that she be added. The trial justice granted the motion even though Mrs. Podren, if she existed, had never been served. Furthermore, while Podren's real estate expert was en route to the court, the trial justice advised Podren's counsel that his case was closed. He announced that he intended to grant Podren the alternative relief sought, namely the sale of lot 87, but for less than the amount for which it was offered. He then

asked the Coelhos' counsel what he believed to be the value of lot 87 and the latter replied, "Approximately Thirty five-Hundred Dollars."

Immediately thereafter, Podren's real estate expert arrived and was permitted to testify. He stated that he was familiar with the lot in question and area generally because he had made an appraisal of all Podren land and that in 1963, the time of the Coelhos' trespass, lot 87 was one of five contiguous lots zoned commercially and owned by Podren. As such, he further testified, its value was substantially more than after severance, for the reason that lot 87 standing by itself, though zoned commercial, would for all practical purposes be considered residential. We think it clear from our examination of this witness's testimony that the trial justice failed to consider it having, in all likelihood, formed a preconceived value of $3,500. It is not as though having considered the testimony he gave it no weight. Rather, it seems to us, the testimony may be said to have been overlooked.

Granting the Johnsons' prayer for rescission, the trial justice ordered them to convey lot 86, again either through or at the nomination of the commissioner to Waterman and awarded the Johnsons $2,500 damages. He arrived at this figure by totaling all of the Johnsons' payments and expenses, which came to $3,538.59, and by charging them $1,048.59 for use and occupancy for some 25 months. This equaled a monthly rental of $41 although all the expert testimony was that a fair rental per month would range from $120 to $150. The award of $2,500 damages was further conditioned on the Johnsons' assignment of their interest in the fire insurance policy to the commissioner.

The commissioner was directed to pay the Peoples Savings Bank $11,500, in consideration for which the bank would cancel the note and discharge the mortgage. Thus, the $17,500 payable to the commissioner by Waterman

would be paid out by him in sums of $3,500 to Podren, $2,500 to the Johnsons and $11,500 to the Peoples Savings bank. Waterman, in turn would wind up with title to the house, both lots and fire insurance claim in diminution of the damages assessed.

We are unaware of any decisional precedent for such an arrangement and think it neither sound in justice or reason. Further, the approach used by the trial justice, broadly viewed, amounts in principle to a consolidation of parties and issues contrary to this court's interpretation of rule 42 of the superior court rules of civil procedure, enunciated in *Marandola* v. *Hillcrest Builders, Inc.*, 102 R. I. 46, 227 A.2d 785. Whether this at least quasi consolidation in and of itself, so prejudices the rights of any of the parties as to call for new trials, we do not inquire since we think it obvious that from the errors inhering in each case, not readily susceptible of correction here, the ends of justice will best be served by sustaining all appeals and remitting both cases for new trials.

*Smith & Smith, Z. Hershel Smith, Archie Smith,* for Fred Podren, plaintiff.

*Charles H. Drummey, Adolph N. Anderson, Jr.,* for Albert C. Johnson et al.

*Edwards & Angell, Stephen A. Fanning, Jr., V. Duncan Johnson,* for People's Savings Bank in Providence and Title Guarantee Company of Rhode Island, defendants.

*Sidney W. Paull,* for Peter J. Coelho et al., defendants.

*Keenan, Rice & Dolan, John T. Keenan,* for Waterman Engineering Company, third party defendant.